UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIKA SIMMONS, ) | CASE NO. 1:12CV2550 |
| ) | |
| Plaintiff, ) | JUDGE JAMES S. GWIN |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| CAROLYN COLVIN, ) | **REPORT AND RECOMMENDATION** |
| ACTING COMMISSIONER OF ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Erika Simmons ("Plaintiff") seeks judicial review of the final decision of Carolyn Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint in its entirety with prejudice:

## I. PROCEDURAL AND FACTUAL HISTORY

On December 22, 2010, Plaintiff filed an application for DIB, with a protective filing date of November 8, 2010[1]. ECF Dkt. #11 at 129-131, 186. Plaintiff alleged disability beginning on April 9, 2010 due to schizophrenia, HIV, paranoia, lower back pain, and neck pain. *Id*. at 191. The SSA denied Plaintiff's application initially and on reconsideration. *Id*. at 90-100. Plaintiff filed a request for an administrative hearing and on May 14, 2012, an ALJ conducted an administrative hearing. *Id*. at 30, 101. At the hearing, Plaintiff was represented by counsel and the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). *Id*. at 30.

On June 1, 2012, the ALJ issued a decision denying benefits. ECF Dkt. #11 at 12-24.

---

[1] According to Defendant and confirmed in the record, Plaintiff was previously awarded DIB with an onset date of June 1, 2000. ECF Dkt. #13 at 2, fn. 2, citing ECF Dkt. #11 at 55-56. She completed a trial work period and her disability ceased in December of 2003 after it was determined that she had engaged in substantial gainful activity after her trial work period ended. *Id*. at 56. Plaintiff had an extended period of eligibility which began in December of 2003 and after a number of extended period of eligibility determinations, her DIB benefits were terminated in April of 2009. *Id*. at 56, 88.

Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id*. at 1-7, 260-261.

On October 12, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On March 20, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #12. On May 6, 2013, Defendant filed a brief on the merits. ECF Dkt. #13.

**II.      SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION**

In her June 1, 2012 decision, the ALJ determined that Plaintiff suffered from degenerative disc disease ("DDD") and schizophrenia, which qualified as severe impairments under 20 C.F.R. § 404.1520, *et. seq*. ECF Dkt. #11 at 14. She found that Plaintiff's HIV was not a severe impairment because although Plaintiff testified that frequent diarrhea from HIV was significant and caused her great limitations, the medical records showed that both before and after Plaintiff began taking medications for her HIV, she did not complain of diarrhea or gastrointestinal symptoms at routine medical examinations. *Id.* at 14-15. The ALJ also indicated that she considered Plaintiff's obesity as required pursuant to Social Security Ruling ("SSR") 02-1p in the sequential analysis.

The ALJ went on to determine that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). ECF Dkt. #11 at 15-17. She concluded that Plaintiff had the RFC to perform light work with the following limitations: frequently using ramps and stairs; frequently crouching and kneeling; occasionally climbing ladders, ropes, or scaffolds; occasionally stooping or crawling; maintaining concentration, persistence or pace for two-hour blocks of time over an eight-hour day and over a normal workweek; understanding, remembering and carrying out instructions that are consistent with performing work at the specific vocational preparation levels of 1 and 2; interacting up to occasionally with the public, coworkers, and supervisors; and a limitation to routine, minor changes in the workplace setting. *Id*. at 17.

Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could return to her past relevant work as a commercial cleaner and she could alternatively perform jobs existing in significant numbers in the national economy, including the representative occupations of a cleaner, folder or a bagger. ECF Dkt. #11 at 22-23.

### III.     RELEVANT MEDICAL HISTORY

Since Plaintiff's only challenges concern her schizophrenia impairment, the undersigned limits review of the medical history to that impairment. ECF Dkt. #12 at 12-17.

On June 29, 2007, Plaintiff presented to the emergency room complaining of difficulty sleeping, restlessness and twitching legs. ECF Dkt. #11 at 381-388. She admitted that she had not been taking her medications for schizophrenia and insomnia and had restarted one of them the day prior and was out of Ambien. *Id*. at 387. She admitted having hallucinations that people are after her, but she reported she was not hearing voices and had no suicidal thoughts. *Id*. She stated that she felt paranoid and agitated and had an appointment with her psychiatrist the following day. *Id*. The doctor found that Plaintiff was agitated but cooperative with good insight, and he released her to home with diagnoses of schizophrenia and insomnia and a prescription for Ambien and orders to see her psychiatrist the following day as planned. *Id.*

On October 19, 2007, Plaintiff underwent a psychiatric evaluation at Murtis Taylor Multi-Service Center.  ECF Dkt. #11 at 310.  Plaintiff reported that she began hearing voices and experiencing paranoia around 1999 or 2000 and recently heard voices three months ago because she was not on medication. *Id.* Plaintiff denied suicidal or homicidal ideations and indicated that she was on Zyprexa and Tetracycline and she was being treated at another facility since 2000. *Id.* She presented as neat and clean, was oriented and cooperative with good eye contact and a good mood, but had rushed thoughts and limited insight. *Id.* at 312. Plaintiff indicated that she had temporary jobs in the past and was not able to concentrate but she felt that she could concentrate at this time. *Id.* Plaintiff was diagnosed with schizophrenia, paranoid type, and she was assigned a Global Assessment of Functioning score of 51 ("GAF"), which indicated moderate symptoms. Diagnostic & Statistical Manual of Mental Disorders-Text Revision 34 (4th Ed. 2000)("DSM-IV-TR"). Plaintiff's Zyprexa prescription was increased. *Id*. at 314.

On May 4, 2010, Plaintiff presented to the Murtis Taylor Center for medication review with Nurse Practitioner Christy where she denied medication side effects, had good cooperation and eye contact, clear speech and indicated that she had good concentration. ECF Dkt. #11 at 320. Plaintiff denied auditory or visual hallucinations, but indicated that she had paranoia at times. *Id*. Her insight

and judgment were fair. *Id.* Her medication was continued. *Id*.

On August 10, 2010, Plaintiff presented to the Murtis Taylor Center for medication review with Nurse Practitioner Christy and reported that she had no side effects from the medications. ECF Dkt. #11 at 318. She was cooperative with good eye contact and clear speech, and denied delusions or paranoia and her insight and judgment were fair. *Id.* Medication was continued. *Id*. Plaintiff presented for another medication review on December 7, 2010 and the same observations and plans were recorded. *Id*. at 319. The nurse practitioner continued Plaintiff's medications and indicated that Plaintiff was stable. *Id*.

On January 10, 2011, progress notes from Murtis Taylor indicate that Plaintiff presented complaining of increased agitation, paranoia and being argumentative. ECF Dkt. #12 at 317. She reported that she felt like she needed to be stabilized and she felt people were after her or talking about her, so she was avoiding public places. *Id*. The nurse noted that Plaintiff was cooperative and had fair eye contact but limited insight. *Id*. Plaintiff admitted that she had felt increased paranoia over the past eight months but denied symptoms even though a prior nurse had brought it to her attention. *Id*. Plaintiff's Zyprexa was increased and she was kept on Abilify. *Id*.

The January 21, 2011 nursing notes from Murtis Taylor indicated that Plaintiff reported that she had better concentration, decreased paranoia, and fair judgment and insight were observed by the nurse practitioner. ECF Dkt. #11 at 316. Plaintiff's Zyprexa was decreased in dosage and she was continued on Abilify. *Id*.

On January 27, 2011, Plaintiff's primary care physician, Dr. Grossman, completed a questionnaire indicating that he began treating Plaintiff on July 2, 2008 and last examined her on January 27, 2011 for her HIV with chronic diarrhea and schizophrenia/anxiety diagnoses. ECF Dkt. #11 at 323. For symptoms and the nature of Plaintiff's medical condition, Dr. Grossman wrote "diarrhea, anxiety, back problems," and when asked to describe all pertinent findings on clinical examinations, he wrote "none." *Id*. He concluded that Plaintiff was "unable to sustain any thoughtful work process." *Id*. at 324.

On March 25, 2011, Dr. Konieczny, Ph.D., conducted a psychological evaluation of Plaintiff for the agency. ECF Dkt. #11 at 409. He noted that Plaintiff was anxious but generally pleasant,

with reasonable flow of conversation and appropriate eye contact. *Id*. at 409-411. Dr. Konieczny noted no indications of paranoid or grandiose thinking, but Plaintiff did report periodic episodes of auditory hallucinations, with the most recent one week prior to the interview. *Id*. at 411. Plaintiff was oriented, but she was moderately impaired in her ability to concentrate, she was unable to perform a serial three subtraction task, and she showed marked deficits in her general fund of information. *Id*. Dr. Konieczny found Plaintiff's insight and judgment to be fair to poor, with moderate deficits in her awareness of rules of social judgment and conformity. *Id.* He also found that Plaintiff showed marked deficits in her overall level of judgment. *Id*.

Dr. Konieczny noted that Plaintiff lived alone and somewhat participated in routine daily household activities. ECF Dkt. #11 at 411. He indicated that while Plaintiff had her own checking account and was her own payee for current benefits, her sister helped her manage her finances and he recommended that Plaintiff receive "supervision and monitoring in the management of her daily activities and in the handling of her financial affairs." *Id.* at 411-412.

Dr. Konieczny diagnosed Plaintiff with schizoaffective disorder, depressive type, and he also considered a borderline intellectual functioning diagnosis based upon Plaintiff's marked deficits in her general fund of information. ECF Dkt. #11 at 412. He indicated that he could not make such a diagnosis without proper psychometric testing. *Id*. He found Plaintiff moderately impaired in her abilities to: concentrate and attend to tasks; understand and follow directions; relate to others and deal with the general public; and to conform and be aware of rules of social judgment. *Id*. Dr. Konieczny concluded that Plaintiff was markedly impaired in her ability to withstand stress and pressure and in her overall level of judgment. *Id*. He reiterated his conclusion that Plaintiff "would appear to require supervision and monitoring in the management of her daily activities and in the handling of her financial affairs." *Id*. He assessed Plaintiff's symptom and functional severity at a GAF level of 48, which indicated serious symptoms and functioning. *Id*.

On April 9, 2011, Dr. Katz, a psychologist, reviewed the evidence of record and completed a psychiatric review technique form in which she found that Plaintiff had the medically determinable impairment of paranoid schizophrenia disorder. ECF Dkt. #11 at 62. She opined that Plaintiff's impairment caused moderate restrictions in daily living activities, moderate difficulties in

maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. *Id*. In making this determination, Dr. Katz indicated that she gave great weight to the opinions of Dr. Konieczny. *Id*. at 63-64. She also completed a mental residual functional capacity ("MRFC") assessment in which she found no evidence that Plaintiff had limitations in the categories of remembering locations and work-like procedures or in understanding, remembering, and executing very short and simple instructions. *Id*. at 65-66. She found that Plaintiff had no significant limitations in the categories of: performing activities within a schedule, maintaining regular attendance, and being punctual; making simple work-related decisions; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them; maintaining socially appropriate behavior; traveling in unfamiliar places or using public transportation; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently of others. *Id.* at 65-67. Dr. Katz found that Plaintiff was moderately limited in the categories of: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision, working with others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting. *Id*. Dr. Katz found Plaintiff to be markedly limited in carrying out detailed instructions. *Id*. at 65.

On May 16, 2011, Dr. Sioson wrote a letter to the agency indicating that he had evaluated Plaintiff one time for the agency on May 16, 2011. ECF Dkt. #11 at 414. Dr. Sioson provided an examination and findings as to Plaintiff's physical complaints and he noted under "mental disorder" that Plaintiff had a history of depression and paranoid schizophrenia since 1999 and was hospitalized in the past with suicidal thoughts. *Id*. He indicated that Plaintiff reported that her medications were not helping as she hears voices for four hours every day and has memory and concentration problems and feels tired and hopeless all of the time. *Id*. Dr. Sioson found Plaintiff to be alert, coherent and oriented, with no abnormal behavior or appearance. *Id*. at 415. He concluded that

-6-

Plaintiff was not emotionally labile upon examination and was able to maintain concentration and attention. *Id.*

On August 3, 2011, Nurse Practitioner Christy completed a psychological questionnaire indicating that Plaintiff had her first examination in 2007 at Murtis Taylor and was seen for medication review with Ms. Christy every two to three months. ECF Dkt. #11 at 419. Ms. Christy indicated Plaintiff's diagnoses as paranoid schizophrenia, HIV, hypertension and herniated disks. *Id.* She reviewed Plaintiff's treatment which included antipsychotic medications and she indicated that these medications cause dizziness, tiredness and lethargy. *Id.*

Nurse Practitioner Christy opined that Plaintiff could not handle being around people due to her paranoia because Plaintiff was afraid of them and her symptoms exacerbate. ECF Dkt. #11 at 419. She indicated that Plaintiff could not concentrate when she becomes symptomatic. *Id.* She concluded that Plaintiff would not be a good candidate for work because of her many physical stressors and illnesses. *Id.* at 420. The nurse also noted that medications would be almost impossible to control Plaintiff's symptoms because without working at the current time, Plaintiff was taking two major antipsychotics for symptom relief. *Id.* Nurse Practitioner Christy also found that Plaintiff was amicable, but could not be around people because of her paranoia and fears as she will start to talk to herself. *Id.* She opined that Plaintiff's attendance at work would be sporadic and Plaintiff had difficulty organizing for a schedule. *Id.* She indicated that Plaintiff had significant symptoms that required constant management and working in a competitive work environment would be too stressful for Plaintiff. *Id.*

On August 8, 2011, Plaintiff presented for medication review and Nurse Practitioner Christy noted that Plaintiff was cooperative with good eye contact and clear speech. ECF Dkt. #11 at 490. Plaintiff reported auditory hallucinations and suicidal thoughts, but no plan. *Id.* Plaintiff's medications were continued. *Id.*

Plaintiff presented for medication reviews on December 5, 2011 and December 17, 2011 and she complained of increased appetite and weight due to her medications. ECF Dkt. #11 at 488, 489. She was cooperative and made fair eye contact, and Nurse Practitioner Niazi noted that Plaintiff's compliance was limited and she was in an argumentative mood, indicating that she had a lot of

people in her life who make her irritable. *Id*. Plaintiff reported no suicidal or homicidal ideations, or any hallucinations. *Id.* Plaintiff was prescribed the additional medication of Latuda along with the Abilify and Zyprexa. *Id*.

On January 20, 2012, agency reviewing psychologist Dr. Lewin reviewed the medical record and made the same psychiatric review technique and MRFC findings as Dr. Katz. ECF Dkt. #11 at 82-84.

On February 4, 2012, Plaintiff presented for a medication review at Murtis Taylor Center with Nurse Practitioner Niaza, who indicated that Plaintiff's auditory hallucinations had stopped and her visual hallucination barely appeared. ECF Dkt. #11 at 601. Plaintiff was cooperative, had fair eye contact, and was in an improved mood. *Id.* Her medications were continued. *Id*.

On March 10, 2012, Plaintiff presented for a medication review with Ms. Niaza. ECF Dkt. #11 at 602. Plaintiff reported that she had run out of her medications two days prior to the review. *Id*. Ms. Niaza indicated that Plaintiff was cooperative with fair eye contact, and Plaintiff was stressed as she had an argument with her friend when she was not feeling mentally stable. *Id.* She reported still hearing mumbled voices, but her visual hallucinations were markedly reduced. *Id*. She was given her medications. *Id*.

On March 31, 2012, Plaintiff presented to Nurse Practitioner Niaza for medication review. ECF Dkt. #11 at 603. Plaintiff was cooperative with fair eye contact, and she reported no auditory or visual hallucinations. *Id*. Plaintiff's medications were continued. *Id*.

On March 31, 2012, Nurse Practitioner Niaza also completed a psychological questionnaire for the agency outlining Plaintiff's initial visit and treatment at Murtis Taylor Center and her role as psychiatric mental health nurse practitioner for medication reviews with Plaintiff. ECF Dkt. #11 at 598. Ms. Niaza indicated Plaintiff's diagnosis as schizophrenia-paranoid type, and she described Plaintiff's symptoms as auditory and visual hallucinations, irritable-agitated mood, poor judgment and lack of sleep. *Id.* Ms. Niaza noted that Plaintiff's antipsychotic medications make her drowsy and her Abilifty and Zyprexa were just decreased because of weight gain and increased appetite. *Id*.

Nurse Practitioner Niaza opined that Plaintiff was unable to work an eight-hour workday, five-day workweek because of her irritability and agitation, as well as her inability to communicate effectively with the public. ECF Dkt. #11 at 598. Ms. Niaza also indicated that Plaintiff had a poor memory and could not remember complicated detailed tasks. *Id*. She further noted that Plaintiff could perform simple tasks for a short period of time and needed to perform repetitive tasks, but Plaintiff was not good with change and would have a hard time communicating and getting along with coworkers due to her poor judgment, irritability, agitation and state of mind. *Id*. at 599. She also found that Plaintiff was not a good candidate to work under normal workday pressures due to her lack of tolerance and patience in dealing with people. *Id*. Ms. Niaza concluded that Plaintiff could perform activities of a repetitive nature for only a short period of time, such as one to two hours, and with very limited contact with the public. *Id*.

On May 14, 2012, outpatient social worker Diana Leigh wrote a letter indicating that Plaintiff attended counseling at Murtis Taylor Center every two weeks to work on "emotional issues." ECF Dkt. #11 at 600. She noted Plaintiff's paranoid schizophrenia diagnosis. *Id*.

## IV.    SUMMARY OF TESTIMONIAL EVIDENCE

At the hearing, Plaintiff indicated that she stopped working on April 9, 2010. ECF Dkt. #11 at 35. She explained that she initially worked on a part-time basis and when asked to work full-time, she did for a few months, but then told her employer that she could not continue full-time because she was around a lot of people and it made her feel paranoid. ECF Dkt. #11 at 36-37. She stated that the stress from work caused her to have diarrhea and she would have accidents and have to leave work. *Id.* at 37. She told the ALJ that it was not from her HIV medications because she was not on HIV medications at the time. *Id*.

When asked why she could not work, she explained that she had excruciating pain in her back that went down her right leg, she had problems lifting objects, and she had diarrhea. ECF Dkt. #11 at 39. Plaintiff indicated that the only complication from her HIV was diarrhea. *Id.* at 43. She also testified that she was on Abilify, Zyprexa and Latuda for schizophrenia and the medications were helping, although she still heard voices two days a week and saw black shadows every night. *Id.* at 44. She reported that this interferes with her daily life because she feels depressed and does

-9-

not want to be around people. *Id.* She stated that she also has problems staying focused and remembering things and she had more bad days than good. *Id.* at 45.. She said that she gets into arguments when she tries to socialize and she is often tired. *Id.* at 46. She told the ALJ that her condition is overwhelming because people look at her differently. *Id.* at 47.

The ALJ thereafter questioned the VE and presented hypothetical individuals to the VE with various restrictions. ECF Dkt. #11 at 48-52. Plaintiff's attorney thereafter questioned the VE as well, adding restrictions to the hypothetical individuals presented by the ALJ. *Id.* at 52-53.

## V.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope

by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## VII. ANALYSIS

Plaintiff's overall assertion is that substantial evidence does not support the ALJ's mental RFC because she did not fully and fairly evaluate the limitations resulting from her schizophrenia. For the following reasons, the undersigned recommends that the Court find that the ALJ fully and fairly evaluated Plaintiff's limitations resulting from her schizophrenia and substantial evidence supports the ALJ's mental RFC for Plaintiff.

### A. STATE REVIEWING PSYCHOLOGISTS' OPINIONS

Plaintiff contends that the ALJ committed error when she stated that she attributed "great weight" to the opinions of the state agency reviewing psychologists but then failed to include one of their limitations in her mental RFC determination. ECF Dkt. #12 at 13-14. Plaintiff further contends that the ALJ erred by failing to explain why she disregarded this part of the state agency reviewing psychologists' opinions. *Id*. at 14.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing the RFC, the ALJ considers all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). While the ALJ must consider and weigh the medical opinions of both treating and agency medical sources, the final responsibility for determining the claimant's RFC is expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

It is true that "the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp.2d 813, 823–24 (S.D.Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; 20 C.F.R. § 404.1527(d),(f); SSR 96–6p at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp.2d at 823–24. However, while an ALJ "'must consider findings of [s]tate agency medical and psychological consultants,' he is 'not bound by any findings made by [s]tate agency medical or psychological consultants.'" *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir.2002) (quoting 20 C.F.R. § 404.1527(f)(2)(i))

The ALJ addressed the opinions of state agency reviewing psychologists Drs. Katz and Lewin and incorporated many of their limitations into her mental RFC for Plaintiff, including limiting Plaintiff to relatively simple instructions and making simple decisions, infrequent changes in routine in a predictable setting, two-hour blocks of time for maintaining concentration, persistence or pace, and only occasional interaction with the public, coworkers and supervisors. ECF Dkt. #11 at 17. In adopting these limitations, the ALJ found that they were consistent with the record as a whole, which included Plaintiff's positive response to relatively conservative treatment and positive objective findings throughout Plaintiff's mental health treatment record both before and after she was laid off due to downsizing at work. *Id.*

Plaintiff complains that the ALJ erred by failing to incorporate the opinions of Drs. Katz and Lewin that Plaintiff "would benefit from relatively close supervision to provide guidance and reassurance as needed." ECF Dkt. #12 at 14, citing ECF Dkt. #11 at 66, 83. The undersigned notes

that this language is not definitive that Plaintiff required close supervision. Rather, Drs. Katz and Lewin noted this suggestion in the limitations section on Plaintiff's ability to sustain concentration and persistence. ECF Dkt. #11 at 66, 83.

Further, and even if it were a definitive limitation, the ALJ did not commit legal error by failing to address it or by failing to incorporate it into her mental RFC for Plaintiff despite giving "significant weight" to those opinions. In determining a claimant's RFC, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i). While an ALJ must consider and weigh these medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec*, 114 Fed. App'x 194, 198 (6th Cir. 2004). "Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction [s]he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."*Smith v. Comm'r of Soc. Sec.*, No. 5:11CV2104, 2013 WL 1150133 (N.D. Ohio, Mar. 19, 2013); *see also Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527, at *15 (N.D. Ohio 2013) and *White v. Comm'r of Soc. Sec.,* - - -F.Supp.2d - - - , No. 5:12CV1637, 2013 WL 4817673, at *16 (N.D. Ohio 2013). Accordingly, the undersigned recommends that the Court find that the ALJ was not legally required to include this specific limitation in her mental RFC for Plaintiff or explain why she did not do so even though she gave significant weight to the opinions of Drs. Katz and Lewin.

### B.    STATE EXAMINING PSYCHOLOGISTS' OPINION

Plaintiff also asserts the ALJ erred in attributing "less weight" to some of the more extensive limitations opined by Dr. Konieczny, the agency examining psychologist. ECF Dkt. #11 at 20-21. Dr. Konieczny found Plaintiff moderately impaired in her abilities to: concentrate and attend to tasks; understand and follow directions; to relate to others and deal with the general public; and to conform and be aware of rules of social judgment. *Id.* The ALJ incorporated these moderate limitations into her mental RFC by limiting Plaintiff's concentration, persistence or pace for two-hour blocks of time, limiting instructions to specific vocational preparation levels of 1 and 2, restricting interaction with the public, coworkers and supervisors to only occasionally, and limiting Plaintiff to routine minor changes in the workplace. *Id.* at 17.

-13-

Dr. Konieczny also concluded that Plaintiff was markedly impaired in her ability to withstand stress and pressure and in her overall level of judgment. ECF Dkt. #11 at 411-412. He further indicated that Plaintiff "would appear to require supervision and monitoring in the management of her daily activities and in the handling of her financial affairs." *Id.* at 412. The ALJ apparently attributed "less weight" to this part of the opinion, since she indicated that she gave "less weight" to Dr. Konieczny's opinion and adopted most of the limitations that he found moderately impaired.   Again, as with the limitations of Drs. Katz and Lewin, the ALJ was not legally required to incorporate the limitations of one-time state-examining psychologist Dr. Konieczny into her mental RFC or to explain why she did not incorporate these limitations into her opinion. *Smith,* 2013 WL 1150133; *see also Taylor*, 2013 WL 6162527, at *15  and *White,* 2013 WL 4817673, at *16. However, the ALJ did explain why she chose not to adopt the extent of the limitations opined by Dr. Konieczny. She determined that his opinion was inconsistent with the evidence of record, including Plaintiff's positive response to relatively conservative treatment of medication and counseling and the positive objective findings throughout her mental health treatment record both before and after she was laid off from employment due to downsizing. ECF Dkt. #11 at 20-21.

The undersigned recommends that the Court find that substantial evidence supports the weight that the ALJ gave to Dr. Konieczny's opinions and the reasons that she gave for the weight that she attributed to them. Plaintiff complains that while the record shows that she received medication and counseling for her schizophrenia, it does not show that her response to this treatment has "always" been "positive" as found by the ALJ. ECF Dkt. #12 at 16. The ALJ did not state that Plaintiff's response to this conservative treatment has "always" been positive. She noted Plaintiff's lengthy treatment history for schizophrenia and her reports of auditory and visual hallucinations, as well as occasional thoughts of suicide at times throughout her treatment. ECF Dkt. #11 at 18. The progress notes at Murtis Taylor Center document reports of some hallucinations, agitation, suicidal thoughts and increased paranoia. *Id.* at 317 (1/10/11 notes); 488 (12/17/11 notes); 489 (12/5/11 notes); 490 (8/8/11 notes); 601 (2/4/12 notes); 602 (3/10/12 notes). However, as the ALJ pointed out, Plaintiff's treatment was conservative in that she was treated with the same two to three medications and counseling, even when she had an increase in symptoms. ECF Dkt. #11 at 20.

Further, Plaintiff reported no hospitalizations due to her schizophrenia during the relevant time period.  In addition, as the ALJ indicated, numerous progress notes from Murtis Taylor Center showed that Plaintiff had positive responses to treatment and positive objective findings were made. ECF Dkt. #11 at 18, 20-21.  March 31, 2012 progress notes indicated that Plaintiff made fair eye contact and was cooperative, but she reported getting into an argument with a friend which caused her stress. *Id.* at 603.  However, she denied hallucinations and she was advised to keep calm and her medications were not changed. *Id.*  Progress notes from February 12, 2012 show that Plaintiff made fair eye contact, was cooperative, her mood had improved, she had no auditory hallucinations and saw barely a shadow of a visual hallucination. *Id.* at 601.  Her mood was assessed as much more stable. *Id*.  January 21, 2011 progress notes indicate that Plaintiff reported that she had been in a "good" mood, she had good eye contact and was cooperative, her concentration was better, she reported her paranoia was lessened, and she denied hallucinations. *Id*. at 316.  Progress notes from February 12, 2012, December 7, 2010, August 10, 2010, and May 4, 2010, also indicated that Plaintiff had a cooperative attitude, good eye contact and she denied hallucinations. *Id*. at 318-320, 601.  She was described as stable and her medications were continued. *Id.*

In reviewing the ALJ's determination, it must be remembered that the Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters, ,* 127 F.3d at 528.  The undersigned recommends that the Court find that the medical evidence of record cited to by the ALJ constitutes substantial evidence to support her determination to give less weight to the more extensive limitations of Dr. Konieczny.

### C. NURSE PRACTITIONERS' OPINIONS

Plaintiff also challenges the ALJ's reasons for giving less weight to the opinions of Nurse Practitioners Christy and Niaza.  ECF Dkt. #12 at 16-17.  She concludes that the ALJ made her own independent assessment of Plaintiff's limitations which were unsupported by the record. *Id.* Plaintiff finds most troubling the ALJ's comment that she has "consistently exhibited a positive response to treatment." *Id*. at 17.

-15-

The undersigned recommends that the Court find that the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision to give the evaluations of Nurse Practitioners Christy and Niazi less weight. In reviewing the opinions of the nurse practitioners, the ALJ noted that they failed to qualify as acceptable medical sources for evaluating Plaintiff's mental status. ECF Dkt. #11 at 21. The ALJ was correct in finding that nurse practitioners are not "acceptable medical sources" under 20 C.F.R. § 404.1513(a) as they are considered "other sources" under 20 C.F.R. § 404.1513(d)(other sources include "[m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners)"). Accordingly, their opinions were entitled to analysis under 20 C.F.R. § 404.1527(c). *See* SSR 06-03p. The ALJ properly cited to SSR 06-03p in her decision in finding that the opinions of Ms. Christy and Ms. Niazi were not acceptable medical sources but still proceeding to analyze their opinions. The ALJ also correctly indicated that it is the ALJ who determines a claimant's RFC and whether a claimant is disabled. 20 C.F.R. § 404.1527(d). The ALJ thereafter reviewed the opinions of both nurse practitioners, finding that they were inconsistent with the record evidence that she found credible, including the positive objective findings in Plaintiff's medical records and her positive response to treatment both before and after she lost her job due to downsizing. ECF Dkt. #11 at 21. The ALJ also found no evidence that Plaintiff's mental functional abilities had worsened since April 2010, when she alleged disability, and Plaintiff's statement that she cannot take care of herself because she was so busy caring for others discredited the assessments of both Ms. Christy and Ms. Niaza. *Id*.

The undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to give less weight to the opinions of the nurse practitioners. As the ALJ indicated, numerous progress notes from medication reviews and counseling with both Ms. Christy and Ms. Niaza showed many times where Plaintiff made good eye contact, had a positive response to treatment, was determined to be stable, was continued on the same medications, and Plaintiff had reported being in a good mood. ECF Dkt. #11 at 310, 316, 318-320, 601, 603. Further, the evidence supports a determination that Plaintiff was laid off from employment as the ALJ referred to a questionnaire that Plaintiff's case manager completed for her in which Plaintiff indicated that she was laid off from her last job due to downsizing. *Id*. at 19, citing *id*. at 210. A conversation between

-16-

the ALJ and Plaintiff at the hearing also confirms a lay-off as Plaintiff reported that she was laid off shortly after she returned to her original part-time employment upon telling her employer that she could no longer work full-time. *Id*. at 36. The ALJ also cited Plaintiff's report that she was too busy caring for others to take care of herself, which negated the nurse practitioners' opinions that she could not handle being around people and was unable to work. *Id*. at 21, citing ECF Dkt. #11 at 492.

Keeping in mind the proper standard to apply, the undersigned recommends that the Court find that substantial evidence supports the ALJ's determination to give less weight to the opinions of Ms. Christy and Ms. Niazi. The ALJ supplied sufficient reasons to attribute less weight to these opinions based upon the record which supports the ALJ's reasons and findings. While substantial evidence may support the opposite conclusion, the evidence cited by the ALJ constitutes substantial evidence to support the weight that she gave to the opinions of the nurse practitioners and the mental RFC that she determined for Plaintiff.

## VIII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's complaint in its entirety with prejudice.

DATE: January 28, 2014                                   */s/George J. Limbert*
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).